IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION

| | |
|---|---|
| WILBER HASTY ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Cause No. 2:22-cv-4054-SRB |
| ) | |
| TEHUM CARE SERVICES, INC., a Texas ) | |
| corporation f/k/a/ Corizon Health, Inc. and ) | |
| Corizon, LLC, ) | |
| ) | |
| YESCARE CORP., a Texas corporation, ) | |
| ) | |
| YESCARE HOLDINGS, LLC, a New York ) | |
| limited liability company, ) | |
| ) | |
| CHS TX, INC., a Texas corporation, ) | |
| ) | |
| VALITAS INTERMEDIATE HOLDINGS, ) | |
| INC., a Delaware corporation, ) | |
| ) | |
| M2 EQUITYCO, LLC, a Florida limited ) | |
| liability company, ) | |
| ) | |
| M2 HOLDCO, LLC, a Florida limited ) | |
| liability company, ) | |
| ) | |
| SARA TIRSCHWELL, in her individual ) | |
| Capacity, ) | |
| ) | |
| HAILEY MALONE, in her individual ) | |
| capacity, ) | |
| ) | |
| ASHLEY RATLIFF, in her individual ) | |
| capacity, ) | |
| ) | |
| JOSSIE LONG, in her individual ) | |
| capacity, ) | |
| ) | |
| STEFFANIE LAMBERT, in her individual ) | |
| capacity, ) | |
| ) | |
| DAWN CAVENDER-ERANGEY, f/k/a ) | |

1

| | |
|---|---|
| Dawn Vineyard, in her individual capacity, | ) |
| | ) |
| TINA DRURY, in her individual capacity, | ) |
| | ) |
| CRAIG CRANE, in his individual capacity, | ) |
| | ) |
| and | ) |
| | ) |
| PATRICK FIELDS, in his individual capacity, | ) |
| | ) |
| Defendants. | ) |

## SECOND AMENDED COMPLAINT

For his Complaint, Plaintiff Wilber Hasty states the following:

1. In April 2020, Mr. Hasty was incarcerated at the Algoa Correctional Center in Jefferson City, MO ("Algoa").

2. During his detention, Mr. Hasty was brought to medical for evaluation because of some hallucinations. The prison's response was to put him in administrative segregation, or solitary confinement, for "close observation."

3. During his time in solitary confinement, Mr. Hasty's mental and physical condition rapidly deteriorated. Numerous clinicians and nurses observed him but failed to give him basic medical treatment to diagnose his condition.

4. Eventually, on April 15, 2020, instead of diagnosing or treating Mr. Hasty, Algoa transferred him to Jefferson City Correctional Center ("JCCC").

5. Upon his arrival, JCCC immediately determined that he needed hospitalization and life-saving treatment. JCCC then rushed Mr. Hasty to the hospital, where he was diagnosed with, among other things, severe dehydration and acute renal failure.

## JURISDICTION AND PARTIES

6. Plaintiff is no longer incarcerated and is an adult individual residing in Troy, Missouri.

7. Defendant Tehum Care Services, Inc. ("Tehum") is a successor by merger to Corizon Health, Inc. and Corizon, LLC, who were the health care providers for Algoa Correctional Center during the relevant time. Tehum is a Texas corporation that is registered to do business in Missouri. At all times relevant, Defendant Corizon acted by and through its agents, servants, contractors and/or employees, who were at all times acting within the course and scope of their employment.

8. Defendant CHS TX, Inc., a Texas corporation, is also a successor by merger to Corizon Health, Inc. and Corizon, LLC. CHS TX, Inc. is registered to do business in Missouri.

9. Defendant YesCare Corp., a Texas corporation, owns CHS TX, Inc. and holds itself out as Corizon.

10. Defendant YesCare Holdings, LLC, is a New York limited liability company that owns 95% of YesCare Corp.

11. Sara Tirschwell is a 5% owner of YesCare Corp. She is also described as the CEO of both Corizon Health (aka Tehum) and YesCare.

12. Valitas Intermediate Holdings, Inc., a Delaware corporation, is the owner of Tehum.

13. M2 EquityCo, LLC, a Florida limited liability company, is the owner of Valitas Intermediate Holdings, Inc.

14. MS HoldCo LLC, a Florida limited liability company, is the owner of M2 EquityCo, LLC.

15. Unless separately identified, the term Corizon or Defendant Corizon below shall refer, collectively, to Defendants Tehum, CHS TX, Inc., YesCare Corp., YesCare Holdings, LLC, Valitas Intermediate Holdings, Inc., M2 EquityCo, LLC, M2 HoldCo, LLC, and Sara Tirschwell.

16. Defendant Hailey Malone was, at all times relevant to this complaint, a nurse at Algoa, a treating nurse of Plaintiff, and an agent, servant, contractor and/or employee of Defendant Corizon. She exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. She is sued in her individual capacity.

17. Defendant Ashley Ratliff was, at all times relevant to this complaint, a nurse at Algoa, a treating nurse of Plaintiff, and an agent, servant, contractor and/or employee of Defendant Corizon. She exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. She is sued in her individual capacity.

18. Defendant Jossie Long was, at all times relevant to this complaint, a nurse at Algoa, a treating nurse of Plaintiff, and an agent, servant, contractor and/or employee of Defendant Corizon. She exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. She is sued in her individual capacity.

19. Defendant Steffanie Lambert was, at all times relevant to this complaint, a nurse at Algoa, a treating nurse of Plaintiff, and an agent, servant, contractor and/or employee of Defendant Corizon. She exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. She is sued in her individual capacity.

20. Defendant Dawn Vineyard, at all times relevant to this complaint, a nurse at Algoa, a treating nurse of Plaintiff, and an agent, servant, contractor and/or employee of Defendant Corizon. She exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. She is sued in her individual capacity.

21. Defendant Tina Drury was, at all times relevant to this complaint, a doctor at Algoa, a treating doctor of Plaintiff, and an agent, servant, contractor and/or employee of Defendant Corizon. She exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. She is sued in her individual capacity.

22. Defendant Craig Crane was, at all times relevant to this complaint, a corrections officer at Algoa who supervised Plaintiff, and an agent, servant, contractor and/or employee of MDOC. He exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. He is sued in his individual capacity.

23. Defendant Patrick Fields was, at all times relevant to this complaint, a corrections officer at Algoa who supervised Plaintiff, and an agent, servant, contractor and/or employee of MDOC. He exhibited deliberate indifference by failing to provide Plaintiff with any appropriate treatment and/or failing to conduct proper testing, monitoring, and consulting. He is sued in his individual capacity.

24. Plaintiff brings this action against Defendants pursuant to 42 U.S.C. § 1983 for Defendants' deprivation of Plaintiffs constitutionally protected liberty rights by reason of Defendants' violation of Plaintiff's substantive and due process rights pursuant to the 8th and 14th

Amendments of the United States Constitution, together with reasonable attorney's fees and costs pursuant to 42 U.S.C. § 1988.

25. Plaintiff asserts supplemental Missouri state law claims against Defendants Corizon, Malone, Ratliff, Long, Lambert, Vineyard, and Drury.

26. This Court has jurisdiction over this action by virtue of 28 U.S.C. § 1331 and § 1343 because the matters in controversy arise under federal law and the United States Constitution. This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

27. Venue is proper in this Court under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs claims occurred in the Western District of Missouri.

## FACTS COMMON TO ALL COUNTS

28. On April 3, 2020, Mr. Hasty was put into administrative segregation for close observation.

29. Algoa and Corizon staff simply forgot about him being in administrative segregation. When they finally discovered him, Mr. Hasty was unconscious, had urinated and defecated all over himself, and had severe injuries all over his body.

30. At that point, Algoa cleaned him up and transferred him to Jefferson City Correctional Center.

31. As discussed below, Jefferson City Correctional Center provided immediate medical care and sent Mr. Hasty to a local hospital by ambulance. At the hospital, Mr. Hasty was given care that saved his life.

32. The picture painted by Algoa records is much different. However, even if those records were true, they describe a complete and utter failure to provide Mr. Hasty adequate medical care.

33. The following paragraphs 26-41 describe what is in those records.

34. On April 6, 2020, Corizon employee Rick Lancaster examined Mr. Hasty and noted that he "appears to not be stable and is not functioning in what is generally consider [sic] acceptable manner."

35. On April 7, 2020, Corizon employee Anna Kirkley observed Mr. Hasty as being non-responsive and in a deteriorating mental state. Defendant Fields also made this observation and observed other unusual behavior and rapid deterioration by Mr. Hasty.

36. Also on April 7, 2020, Corizon employee Christopher Mawhinney was told by the Functional Unit Manager of Housing Unit 3 "I don't think we're equipped to handle Mr. Hasty." Mawhinney noted that Mr. Hasty drank from the toilet and did not eat breakfast or his beverage. Mawhinney also observed Mr. Hasty dipping his tablet in the toilet.

37. On April 8, 2020, Defendant Drury observed Mr. Hasty engage in bizarre and unsanitary behavior and in a condition that was rapidly deteriorating.

38. Later on April 8, 2020, Corizon employees Kirkley and Mawhinney further observed Mr. Hasty's deteriorating behavior and noted that he was having trouble forming basic words and engaged in manic behavior.

39. From April 9, 2020 to April 10, 2020, Kirkley, Mawhinney, and Defendant Lambert continually evaluated Mr. Hasty, noted his physical and mental deterioration but failed to provide or request any additional intervention or medical care to address this continued deterioration.

40. There is a notable gap in the records from April 10 to April 13, 2020.

41. On April 13, 2020, Mawhinney and Defendants Malone, Crane, and Fields conducted a wellness exam of Mr. Hasty. They observed that he was nonresponsive, had difficulty standing, and disoriented as to person, place, and time.

42. On the same day, Defendant Ratliff also conducted a wellness exam of Mr. Hasty. She observed that Mr. Hasty was not eating or drinking and had scratch marks and scabbing on his inner thigh and shins.

43. During this time, numerous Defendants observed that Mr. Hasty has injured himself severely by rubbing Velcro on his body, causing the removal of skin and severe wounds all over his body.

44. On April 14, 2020, Defendant Vineyard examined Mr. Hasty and noted that he was unable or unwilling to consent to a status check because of his mental status.

45. On April 15, 2020, Defendant Long examined Mr. Hasty. She described Mr. Hasty to be in a very deteriorated stated, dehydrated, and with numerous cuts on his body and dried blood on his lips. She also learned that an unknown person ordered the water to be shut off to Mr. Hasty's cell. Ms. Long also admitted that she was aware Mr. Hasty was not taking in enough fluids during his time in administrative segregation. Despite this, she did not seek immediate hospitalization.

46. Later that same day, Defendant Drury and Dr. Narendrasinh Khengar and nurse Nicole Massman examined Mr. Hasty and noted his rapid deterioration, and extreme mental and physical distress. They also declared Mr. Hasty to be in an emergency medical condition. Despite this, they did not seek immediate hospitalization. Instead, they decided to transfer him to Jefferson City Correctional Center.

47. When Mr. Hasty arrived at Jefferson City Correctional Center, he was examined by a doctor, who ran lab tests, and immediately sent to the emergency room at Capital Region Medical Center.

48. At no time prior to transferring Mr. Hasty, who was rapidly deteriorating physically and mentally and clearly dehydrated, did any of the Defendants offer adequate care for Mr. Hasty,

including but not limited to, offering medical treatment, supplying IV fluids, or requesting lab work to be done. They just continued to observe Mr. Hasty deteriorate without considering any medical intervention.

49. Algoa and Corizon also have a general policy to avoid hospitalization of inmates.

50. In addition, even many of the "exams" conducted by Defendants were wholly inadequate because prison policy forbade entry into Mr. Hasty's cell unless he was handcuffed. This required him to stand at his door. Defendants noted at various times that Mr. Hasty was unable to stand and thus their "exams" were incomplete and inadequate.

51. Capital Region Medical Center, however, noted significant problems with his lab results and diagnosed Mr. Hasty with acute renal failure and a number of other maladies. Capital Region Medical Center finally began treating his condition, and Mr. Hasty began to improve.

## COUNT I
**Claim for Damages for Deprivation of Eighth Amendment Right to Medical Care Against Defendants Malone, Ratliff, Long, Lambert, Vineyard, Drury, Crane, and Fields.**

52. Plaintiff incorporates by reference each and every allegation contained in the above paragraphs.

53. As described above, Defendants all observed Mr. Hasty's rapid physical and mental deterioration.

54. At all relevant times Defendants were performing governmental functions under the color of state law.

55. Defendants exhibited deliberate indifference by failing to provide Plaintiff with any medical or mental health care to address his rapidly deteriorating physical and mental health.

56. Defendants Crane and Fields, in their roles as supervisors, were actually aware of Mr. Hasty's rapidly deteriorating health. They personally observed him in a physical and

9

Case 2:22-cv-04054-SRB   Document 73   Filed 12/06/22   Page 9 of 17

psychological condition that would have been recognizable as an emergency to any lay person. They did not act.

57. Defendants Crane and Fields and other Algoa corrections officers had an independent and separate duty to monitor and observe Mr. Hasty. They were primarily charged with these duties throughout the day and were in addition to the duties and responsibilities of the Corizon employees. They were responsible for ensuring Mr. Hasty was living in sanitary living conditions, was in good health, was not harming himself, and had access to food and water.

58. Defendants Crane and Fields and other Algoa corrections officers also failed to monitor and observe Mr. Hasty for a number of days, allowing him to further deteriorate without any possibility of intervention and thus denied him medical care.

59. Each of these Defendants were personally aware of his condition, through observation and familiarity with the observations of others. They were also aware, given their training, that the appropriate response was to conduct medical testing, provide adequate care for his mental distress, and to provide Mr. Hasty medical treatment. They did not do these things.

60. As described above, Mr. Hasty suffered from one or more objectively serious medical needs.

61. As described above, Defendants actually knew of but deliberately disregarded those needs by denying adequate medical care and/or failing to respond to prisoner's serious medical needs.

62. As described above, Mr. Hasty's condition is one that was diagnosed by a physician as requiring treatment and was also so obvious that even a layperson would easily recognize the necessity for a doctor's attention.

63. As a direct and proximate result of the failure of the Defendants, Plaintiff was harmed and endured pain, suffering, discomfort and mental anguish, and sustained acute and permanent injuries to his body

64. As a direct and proximate result of the failure of the Defendants, Plaintiff has suffered and will continue to suffer damages, including but not limited to physical pain, physical impairment, mental anguish, emotional distress, and loss of capacity to enjoy life.

65. The acts and omissions of each Defendant named herein were outrageous because of their conscious disregard and reckless indifference to the rights of Plaintiff warranting an award of punitive and exemplary damages.

**COUNT II**
**Claim for Damages for Deprivation of Eighth Amendment Right to Humane Conditions of Confinement Against Defendants Crane and Fields**

66. Plaintiff incorporates by reference each and every allegation contained in the above paragraphs.

67. Crane and Fields were supervisors in charge of the corrections officers responsible for caring and observing Plaintiff.

68. As supervisors, Crane and Fields either made the decision and/or were aware of the decision to turn off water to Plaintiff's cell.

69. Depriving an inmate of all access to water is an objectively and sufficiently serious deprivation.

70. This deprivation resulted in the denial of the minimal civilized measure of life's necessities.

71. Defendants Crane and Fields were deliberately indifferent to an excessive risk to Plaintiff's health and safety in that they knew of and disregarded the risk to Plaintiff of depriving him of water for days.

72. As a direct and proximate result of the failure of the Defendants, Plaintiff was harmed and endured pain, suffering, discomfort and mental anguish, and sustained acute and permanent injuries to his body

73. As a direct and proximate result of the failure of the Defendants, Plaintiff has suffered and will continue to suffer damages, including but not limited to physical pain, physical impairment, mental anguish, emotional distress, and loss of capacity to enjoy life.

74. The acts and omissions of each Defendant named herein were outrageous because of their conscious disregard and reckless indifference to the rights of Plaintiff warranting an award of punitive and exemplary damages.

## COUNT III
### Negligence/Medical Malpractice
### Against Defendants Corizon, Malone, Ratliff, Long, Lambert, Vineyard, and Drury

75. Plaintiff incorporates by reference each and every allegation contained in the above paragraphs.

76. Corizon, through defendants Malone, Ratliff, Long, Lambert, Vineyard, and Drury, failed to use that degree of skill and learning ordinarily used under the same or similar circumstances by the members of its profession, and was thereby negligent in one or more of the following respects:

    a. Failing to conduct medical testing on Mr. Hasty;

    b. Failing to provide Mr. Hasty any medical treatment;

    c. Failing to provide Mr. Hasty fluids intravenously;

d. Failing to provide Mr. Hasty adequate care for his mental distress;

e. Failing to send Mr. Hasty to a hospital for acute care;

f. Failing to do anything to address Mr. Hasty's rapidly deteriorating physical and mental health;

g. Failing to direct treaters to provide proper testing, monitoring, and consulting; and

h. Failing to monitor and observe Mr. Hasty for a number of days, allowing him to further deteriorate without any possibility of intervention.

77. Drury and Long failed to adequately monitor and treat Hasty and failed to adequately supervise and train the other medical employees under their supervision. Drury and Long failed to adequately monitor the observations of the other medical staffs and intervene when Mr. Hasty first needed medical attention, which was well before the date they sent him to JCCC and ultimately to the hospital. Had they adequately monitored his condition, they would have known that Mr. Hasty was suffering medical injuries that were going untreated.

78. Due to Defendants failure to monitor and/or treat Mr. Hasty, his mental and medical condition worsened as it went untreated. He suffered unnecessary injuries, pain, and trauma, and his medical conditions were exacerbated by failing to intervene at the appropriate time.

79. During this time, Mr. Hasty was suffering from, among other things, dehydration and acute renal failure. Instead of providing him medical treatment, Defendants kept him locked in a cage by himself during which time his medical condition worsened. Based on their observations of his deteriorating medical and mental health, Defendants all had a duty to monitor Mr. Hasty's condition intervene and provide medical intervention and treatment much earlier than

they did. Their failure to do so caused Mr. Hasty's medical condition to unnecessarily worsen and caused him additional medical injuries, pain, and suffering.

80. The complete failure to provide adequate care was so inappropriate as to evidence intentional maltreatment or a refusal to provide essential care.

81. As a direct and proximate result of the failure of the Defendants, Plaintiff was harmed and endured pain, suffering, discomfort and mental anguish, and sustained acute and permanent injuries to his body.

82. As a direct and proximate result of the failure of the Defendants, Plaintiff has suffered and will continue to suffer damages, including but not limited to physical pain, physical impairment, mental anguish, emotional distress, and loss of capacity to enjoy life.

## COUNT IV
### *Monell* Liability Against Defendant Corizon

83. Plaintiff incorporates by reference each and every allegation contained in the above paragraphs.

84. As to Counts I and II, Defendant Corizon was the employer of Defendants Malone, Ratliff, Long, Lambert, Vineyard, and Drury, with the attendant right to control each of their actions within the scope of employment.

85. The injuries caused by those Defendants occurred within the scope of their employment.

86. Moreover, to the extent Corizon claims it was acting under color of state law, Corizon had a policy, custom, or official action that inflicted an actionable injury.

87. Corizon had numerous customs, practices, or policies that resulted in the deprivation of Mr. Hasty's constitutional rights, including the custom, practice, or policy of denying adequate medical treatment and hospitalization to inmates; denying proper testing,

monitoring, and consulting; avoiding transporting patients to hospitals; failing to timely intervene in crisis mental and medical health situations until medical problems were needlessly exacerbated.

88. As exhibited by the behaviors of its employees, Corizon's policy to deny adequate testing, monitoring, consulting, and treatment directly harmed Mr. Hasty, as described above.

## COUNT V
## Successor Liability

89. Plaintiff incorporates by reference each and every allegation contained in the above paragraphs.

90. Since late 2021, Defendants Tehum, CHS TX, Inc., YesCare Corp., YesCare Holdings, LLC, Valitas Intermediate Holdings, Inc., M2 EquityCo, LLC, M2 HoldCo, LLC, and Sara Tirschwell have been engaged in a corporate shell game designed to strip the former Corizon entities of assets in order to avoid Corizon's many liabilities.

91. Tehum and CHS TX, Inc. are both successors to Corizon. *See*, *e.g., Jackson v. Corizon Health Inc.*, No. 2:19-cv-13382-GAD-PTM (S.D. Mich. November 1, 2022) (D.E. 89) (granting motion to add Tehum and CHS TX, Inc. as defendants on a theory of successor liability).

92. Through a number of machinations, Corizon merged various entities, split off CHS TX, Inc., and then renamed itself Tehum. As expressly acknowledged by Corizon's counsel, Corizon did this with the intent to separate its liabilities from its assets and revenue streams.

93. YesCare then was created to "acquire" CHS TX, Inc. However, YesCare still holds itself out as Corizon, even going so far as to describe its Chief Executive Officer Sara Tirschwell as the CEO of both YesCare and Corizon Health.[1]

---

[1] https://www.yescarecorp.com/team-1/sara-tirschwell

94. As successors to Corizon Health Inc. and Corizon LLC, both Tehum and CHS TX, Inc. are equally liable for the liabilities of those entities and the damages caused by the injuries suffered by Plaintiff.

## COUNT VI
## Piercing the Corporate Veil/Alter Ego

95. Plaintiff incorporates by reference each and every allegation contained in the above paragraphs.

96. As described above, Defendants Tehum, CHS TX, Inc., YesCare Corp., YesCare Holdings, LLC, Valitas Intermediate Holdings, Inc., M2 EquityCo, LLC, M2 HoldCo, LLC, and Sara Tirschwell have all engaged in a complicated shell game to attempt to avoid paying Corizon's liabilities in this and the other many cases against the Corizon defendants.

97. Tehum is owned by Valitas Intermediate Holdings, Inc., which is in turn owned by M2 EquityCo, LLC, which is in turn owned by M2 HoldCo, LLC (Valitas, M2 EquityCo and M2 HoldCo are the "Tehum entities").

98. CHS TX, Inc. is owned by YesCare Corp., which is in turn owned by YesCare Holdings, LLC and Sara Tirschwell ("CHS entities").

99. Upon information and belief, some or all of the Tehum entities also own YesCare Holdings, LLC.

100. Sara Tirschwell is both the CEO of Corizon Health (now Tehum) and YesCare. The entities also share other employees and resources.

101. By stripping the former Corizon entities of assets and shifting around liabilities, the Tehum entities and the CHS entities are undercapitalizing Tehum and CHS TX, Inc. in an effort to avoid their liabilities.

102. The Tehum entities and the CHS entities are not observing the corporate form and are comingling assets, liabilities, and employees of the various entities.

103. Tehum and CHS TX, Inc. are joint employers of the individual Corizon Defendants.

104. Tehum and CHS TX, Inc. are the alter egos of the Tehum entities and CHS entities, respectively.

105. As such, the Court should pierce the various corporate veils of these entities and hold the owners of these entities liable for the damages that Tehum and CHS TX, Inc. caused Plaintiff.

## JURY DEMAND

106. Plaintiff hereby demands a trial by jury for all issues in this matter.

WHEREFORE, Plaintiff prays for a Judgment against Defendants, jointly and severally, for damages for physical injuries, for medical costs incurred and to be incurred, and other compensatory damages in an amount to be determined at trial, punitive damages against all defendants in an amount to be determined at trial, attorney's fees, costs and disbursements pursuant to law, and such other and further relief as the Court deems just and proper.

Dated: November 15, 2022              Respectfully submitted,

                                      KHAZAELI WYRSCH, LLC

                                      /s/ James R. Wyrsch
                                      James R. Wyrsch, #53197
                                      911 Washington Avenue, Suite 211
                                      St. Louis, Missouri 63101
                                      james.wyrsch@kwlawstl.com
                                      Phone No. (314) 288-0777
                                      Fax No. (314) 400-7701